IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY PAUL TAYLOR AND § | | |
| PAMELA LAVELLE VARNELL, § | | |
| INDIVIDUALLY AND UPON BEHALF § | | |
| OF THE HEIRS OF THE ESTATE § | | |
| OF DAVID PAUL TAYLOR § | | |
|     Plaintiffs § | | |
| § | CIVIL ACTION NO. 4:11-cv-03740 | |
| v. § | | |
| § | | |
| RICHMOND STATE SUPPORTED § | | |
| LIVING CENTER § | | |
|     Defendants § | | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**NOW COMES** Plaintiffs herein, by and through their attorneys of record, and brings this, *Plaintiff's Response to Defendant's Motion to Dismiss*, and in support thereof, respectfully show the following:

**I. INTRODUCTION AND BRIEF REVIEW**

1. This is a case for damages against Richmond State Supported Living Center ("Richmond") arising from the death of David Taylor. Plaintiffs brought suit after David was brutally assaulted by a Richmond employee and then denied medical care for 24-48 hours while he died in his room from internal injuries.

2. This is not a garden-variety negligence action, nor is it a suit attempting to hold the State responsible for its employee's acts on a theory of *respondeat superior*. To the contrary, this suit involves the State's own acts in failing to supervise, monitor, train and screen it employees – all of which were a "moving force" in David's death. David Taylor was a severely disabled person who was beaten to death and then denied medical treatment for

       days, despite his disability calling for 1:1 supervision at all times. Richmond permitted this to happen *after it had been* notified of U.S. Department of Justice findings that it had repeatedly failed to ensure that clients were free from abuse, neglect, and mistreatment, repeatedly failed to have sufficient direct care staff to meet client needs, repeatedly failed to protect clients from abuse, repeatedly failed to train staff, repeatedly failed to investigate allegations of abuse, neglect, or mistreatment, and repeatedly failed to provide clients with health care services. In fact, the Federal Government sued the State of Texas for these failures – threatening to cut off federal funds for the State's failure to provide these rudimentary services. The State settled that lawsuit by a consent settlement and promised to actually provide training, supervision, monitoring and screening. But, even after being notified of deficiencies, sued for the deficiencies, settling with promises to remedy the deficiencies, the State still failed to comply with its statutory obligations, and with the agreements it made in the settlement agreement with the federal government. But for Richmond's failure to ensure that David was free from abuse and neglect and Richmond's failure to ensure that David received medical care, David Taylor would be alive today.

3.    Due to their deliberate indifference of these pervasive problems, Richmond is liable for David's death under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504") and the Americans with Disabilities Act, 42 U.S.C. §12101 ("ADA"). These claims are addressed in detail in *Plaintiff's Original Complaint*. The allegations tell a story that is plausible, logical, and compelling and as such, Defendant's *Motion to Dismiss* should be denied.

## II. STANDARD OF REVIEW

A.   **STANDARD FOR RULE 12(b)(1) MOTION TO DISMISS**

4. In examining a Rule 12(b)(1) motion, the court may consider matters of fact that may be in dispute. Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the Plaintiff cannot prove any set of facts in support of his claim that would entitle Plaintiff to relief. *Ramming v. U.S.*, 281 F.3d 158 (5th Cir. 2001).

5. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (U.S. 2007). A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557. See *Ashcroft v. Iqbal*, 556 U.S. 662 (U.S. 2009).

B.   **STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS**

6. Dismissal of a complaint pursuant to Rule 12(b)(6) is proper only if the Court can determine with certainty that the Plaintiff cannot prove any set of facts that would allow relief under the allegations in the complaint. *Scanlon v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The Court cannot decide contested issues of fact and must assume all material facts noted in the Plaintiffs complaint are true. *Id.* at 536. The Court must

indulge all inferences in favor of the Plaintiff. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Importantly, motions to dismiss are viewed with disfavor and rarely granted. *Id.* at 498.

7. Further, even in the event a claimant has failed to adequately state a claim upon which relief can be granted, before the motion should be granted, the plaintiff should be given the opportunity to replead. *Borinski v. Williamson,* No. 3:02 CV 1014 L, 2002 U.S. Dist. LEXIS 22346 at *4 (N.D. Tex. Nov 18, 2002) (hold that dismissal is warranted only if, after having been given opportunity to amend, plaintiff still fails to state a claim); see also *United States ex rel. Adrian v. Regents of University of California*, 363 F.3d 398, 403 (5th Cir. 2004) (holding that leave to amend should be freely given pursuant to Federal Rule of Civil Procedure 15(a)); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (notes that the Fifth Circuit supports the premise that "granting leave to amend is especially appropriate…when the trial court has dismissed the complaint for failure to state a claim[.]")

### III. <u>FACTUAL BACKGROUND</u>[1]

8. David Paul Taylor suffered from severe autism and profound mental retardation and in 2004, at the age of 22, was admitted as a permanent resident of the Richmond State Supported Living Center. (¶11-14). Due to his disabilities, per Doctor's orders, David was required to have 1:1 supervision at all times. (¶19). Because David's disabilities left him unable to communicate, David was especially susceptible to abuse, neglect, and exploitation. (¶25).

---

[1] All citations are to Plaintiffs' *Original Complaint*. (Docket Entry #1).

*Plaintiff's Response to Defendant's Motion to Dismiss*     4

9.  In December, 2008, the United States Department of Justice found that Richmond failed to protect clients from abuse, neglect, and mistreatment, failed to have sufficient direct care staff to meet clients' needs, failed to protect clients from abuse during investigations, failed to provide staff training, failed to investigate allegations of abuse, neglect, or mistreatment, and failed to provide clients with health care services. (¶16).

10. In 2009, Richmond entered into a Settlement Agreement with the Department of Justice, requiring that they immediately implement policies, procedures and practices requiring a commitment that they not tolerate abuse or neglect of individuals, that staff be required to report abuse or neglect of individuals, that staff take immediate and appropriate action to protect individuals after abuse, neglect, exploitation, or serious injury, and competency-based training for all staff on recognizing and reporting potential signs and symptoms of abuse, neglect, and exploitation. (¶17).

11. Despite the Department of Justice investigation and subsequent Settlement Agreement, the conditions of abuse, neglect, and exploitation giving rise to that investigation remained. (¶18, 26).

12. On or around October 6, 2010, David was violently beaten by Rivers Glover, a Richmond employee, causing internal injuries. (¶20-21). David was left alone to die in his room, with Richmond nurse Amara Oporanozie failing to check on him a single time, until he was found dead on October 8, 2010. (¶22-24). Had Oporanozie checked on him a single time, she would have immediately been able to tell that something was seriously wrong with David and he could have received medical treatment to prevent his death. (¶23).

## IV. ARGUMENT AND AUTHORITIES

### A. Plaintiff Claims under Section 504 and the ADA are Well-Pled

13. Section 504 of the Rehabilitation Act specifically provides:

> No otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…

    29 U.S.C. § 794.

14. This is common statutory language for discrimination statutes, and is virtually echoed in Title VII and Title IX. In both of those statutes, the United States Supreme Court has not only found the existence of a private cause of action, but has provided a remedy in the form of money damages. *See, e.g., Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (U.S. 1992), *Cannon v. University of Chicago*, 441 U.S. 677 (U.S. 1979).

15. In fact, the other statutes that incorporate this language (exclusion for participation, denial of benefits or subjected to discrimination) provide a cause of action, and a remedy for much more benign damages. They do not require personal injury or death – as was the result of the discrimination here. Mere harassment (by employees or by peers) is sufficient to trigger a valid and plausible claim for discrimination.

16. To establish a prima facie case under Section 504 or the ADA[2], a plaintiff must show that he is a qualified person with a disability, who, because of his disability was excluded from or denied the benefits of the services, programs, or activities of a public entity or

---

[2] The language of Section 504 and the ADA is "virtually identical", the primary difference being that Section 504 applies only to recipients of federal funds. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 291 (5th Cir. 2005). As Defendant concedes that Richmond is a recipient of federal funds, Plaintiff will treat his Section 504 and ADA claims as identical.

*Plaintiff's Response to Defendant's Motion to Dismiss* 6

was subjected to discrimination by a public entity. *Pace*, 403 F.3d 272, 291 (5th Cir. 2005).

17. Defendant seemingly concedes that Plaintiffs sufficiently plead that David is a person with a disability and that Richmond is both a recipient of public funds and a public entity. Rather, Defendant claims that Plaintiffs failed to show discrimination.

18. Defendant first asserts that Plaintiffs have not pled that David was treated less favorably due to his disability. However, Plaintiffs' *Original Complaint* clearly states that David was unable to communicate due to his disability and thus alleges that his inability to complain to anyone if he was being abused or neglected made him particularly vulnerable to abuse and neglect. The acts of the State that make one particularly "vulnerable" to abuse or discrimination are within the definition of "subjecting one to discrimination". In *Davis v. Monroe County Bd. of Educ.*, the Court described "subjecting" one to discrimination in the following way:

> If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subjects" its students to harassment. That is, the deliberate indifference must, at a minimum, "cause [students] to undergo" harassment or "make them liable or vulnerable" to it. Random House Dictionary of the English Language 1415 (1966) (defining "subject" as "to cause to undergo the action of something specified; expose" or "to make liable or vulnerable; lay open; expose"); Webster's Third New International Dictionary of the English Language 2275 (1961) (defining "subject" as "to cause to undergo or submit to: make submit to a particular action or effect: EXPOSE").

526 U.S. 629, 644-645 (U.S. 1999)

19. The act of discrimination here is clear. David was physically abused by an employee and then denied medical treatment. Those act and omissions are actionable as "discrimination." Abuse and harassment are clearly actionable under statutes similar to

Section 504. *See Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60 (U.S. 1992). Certainly, physical assault on a much more severe level must be actionable. And, although the proof at trial, or the evidence eventually developed may show yet more actionable conduct by the State, the Plaintiffs' burden here is simply to plead a plausible set of facts that would give rise to liability. The State simply cannot exclude all possible liability for all claims under the ADA or the Rehabilitation Act simply by saying that the act of a State employee committing a physical assault is not "discrimination".

20. The State's contentions in its Motion to Dismiss appear to address the more remote and fact-laden question of the moral culpability of the Richmond State School. The Plaintiffs acknowledge that their eventual proof at trial must show a heightened standard of culpability; not mere negligence, but more akin to conscious indifference to the discriminatory acts, a conscious indifference to training obligations, or a gross mismanagement of the rehabilitation plan specifically applicable to David .

21. Furthermore, Richmond "cannot remain willfully blind" to abuse and neglect "and then use its uniform failure to protect as a shield from liability." *Ejem v. Waco Center for Youth*, 6:10-cv-00268 (W.D. Tex. May 9, 2011), citing *Davis*, 526 U.S. at 642-43.

22. Defendant makes seemingly the same argument regarding Plaintiffs' disparate impact claim, but again, Plaintiffs have alleged that David's particular disabilities, rendering him unable to communicate and thus unable to report that he was being abused, neglected, or deprived of necessary medical treatment, made him especially susceptible to abuse and neglect.

23. Defendant next asserts that Plaintiffs have not alleged that denial of medical treatment or physical assaults of residents is a regular policy, custom, or practice at Richmond.

      However, Plaintiffs' allegations reference a Department of Justice report outlining numerous incidents of abuse of residents, neglect of residents, and the failure to provide residents with medical care at Richmond.

24. Further, the case law on this issue, and in this context, is clear that much like with a disabled student, Richmond has an affirmative duty to provide David a safe environment and an ability to do so is a violation of Section 504. *See Miles v. Cushing Public Sch. Indep. Dist.*, 2008 WL 4619857 (W.D. Okla. 2008), *see also Todd v. Elkins Sch. Dist.*, 105 F.3d 663 [Unpublished – 1997 WL 7551] (8th Cir. 1997) *citing W.B. v. Matula*, 67 F.3d 484, 501 (3rd Cir. 1995) (school liable for "gross mismanagement" of the child's educational plan). Richmond's failure to provide David a safe environment satisfied pleading requirements at this stage of the litigation.

25. This affirmative duty to keep David safe is not only a common law duty. It arises, first of all, from the fact that David is David is in "custody" for purposes of this duty to provide a safe environment.

## V. <u>CONCLUSION</u>

David Taylor was killed because of the complete and total inaction on the part of Richmond to protect him from a known dangerous environment. The pleadings allege more than is necessary to recover for his injuries. There is no reason to deny him the right to proceed with discovery and to present his case at a later state. There is every legal, factual, and logical reason to proceed further. Plaintiffs have met the requirements for pleading, his case should proceed, and Defendant's Motion to Dismiss should be denied.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs request that *Defendant's Motion to Dismiss* be denied in its entirety, or alternatively, only granted in part, and further relief as the Court may deem just and proper in law or in equity. Should this Court find reason to grant Defendant's *Motion*, in whole or in part, Plaintiffs respectfully request the opportunity to re-plead.

    Respectfully submitted,

    Cirkiel & Associates, P.C.

    /s/ Martin J. Cirkiel
    Martin J. Cirkiel, Esq.
    State Bar No. 00783829
    1901 E. Palm Valley Blvd.
    Round Rock, Texas 78664
    (512) 244-6658 [Telephone]
    (512) 244-6014 [Facsimile]
    marty@cirkielaw.com

    Michael Zimmerman, Esq.
    State Bar No. 22271400
    The Zimmerman Law Firm
    3501 W. Waco Drive
    Waco, Texas 76710
    (254) 752-9688 [Telephone]
    (254) 752-9680 [Facsimile]
    mzimmerman@thezimmermanlawfirm.com

    Greg White
    State Bar No. 21329050
    P. O. Box 2186
    Waco, Texas 76703
    (254) 717-5728 [Telephone]
    (866) 521.5569 [Facsimile]
    greg.white@texapplaw.com

    **ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing has been forwarded to the following parties on this 9th day of January, 2012 by Notice of Electronic Filing from the Clerk of the Court:

Daniel C. Perkins  
General Litigation Division  
P.O. Box 12548, Capitol Station  
Austin, Texas 78711-2548  

**ATTORNEYS FOR DEFENDANTS**

                                                           /s/ Martin J. Cirkiel  
                                                           Martin J. Cirkiel