# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS,
# WACO DIVISION

| | | |
|---|---|---|
| RICK EJEM a/n/f for | § | |
| JUSTIN EJEM | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. W-10-CA-00268 |
| | § | |
| WACO CENTER FOR YOUTH, | § | |
|     Defendant. | § | |

## ORDER

Before the Court are the Motion to Dismiss submitted by the Waco Center for Youth (the Center) and the Motion for Leave to File a First Amended Complaint submitted by Rick Ejem (Ejem). Having considered the motions, their respective responsive and replies, and the applicable legal authority, the Court concludes that the motion for leave to amend should be granted and that the motion to dismiss should be denied.

**I.    Statement of Facts**

For the purpose of deciding the motion to dismiss, the Court must assume that the facts Ejem alleged in his complaint are true and construe them in the light most favorable to him. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Ejem's son, Justin, is disabled. Justin has attention deficit hyperactivity disorder, bipolar disorder, and emotional disturbance. These disorders have caused hallucinations, improper outbursts, and inappropriate behavior. They ultimately

1

resulted in Justin's placement at the Center, a residential treatment facility for troubled teenagers.

While he resided at the Center, Justin's roommate raped him, forcing him to have oral and anal sex. Justin promptly reported the assault to an unknown supervisor. Nevertheless, the Center did not investigate Justin's allegations or take any steps to ensure his safety. Justin was raped again. At this point, Ejem learned of the assaults and removed Justin from the facility.

Ejem then sued the Center as next friend for Justin. He asserted a claim under 42 U.S.C. § 1983 and a "state-created danger" theory of recovery. He also alleged that the Center had discriminated against Justin in violation of Title IX of the Education Amendments Act of 1972 and the Rehabilitation Act of 1973.

The Center moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). It claimed that Ejem lacked standing to sue as Justin's next friend. The Center also argued that the § 1983 and "state-created danger" claims are were not viable and that Ejem failed to plead facts showing discrimination. Ejem simultaneously filed a response and a motion for leave to amend his complaint. The proposed amendments withdraw the § 1983 and "state-created danger" claims against the Center and instead assert them against "John Doe," the unknown supervisor to whom Justin reported the first rape. The Center opposes Ejem's motion but argues that, even if the Court gives leave to amend, it should still dismiss the claims.

## II.     Amendment of the Complaint

Because the Court must identify the operative version of the complaint before determining whether it invokes federal jurisdiction or states a claim, the first issue is whether Ejem should be given leave to amend. The Federal Rule's liberal amendment policy, coupled with the Center's failure to raise a valid objection, convinces the Court to allow the amendments.

*A. Rule 15 Standard*

Under Rule 15, after the time for amending as a matter of course has passed, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." See Fed. R. Civ. P. 15(a)(2). Although the decision to allow the amendments lies within the court's discretion, Rule 15 states that "[t]he court should freely give leave when justice so requires." See id.; *Foman v. Davis*, 371 U.S. 178, 182 (1962). Overcoming Rule 15's "bias in favor of granting leave to amend" requires a substantial reason, such as undue delay, bad faith, or dilatory motive by the movant, a repeated failure to cure deficiencies, undue prejudice to the non-movant, or the futility of the amendment. See *Foman*, 371 U.S. at 182; *Stripling v. Johnson Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000). Otherwise, "the discretion of the … court is not broad enough to permit denial." See *Stripling*, 234 F.3d at 872 (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

B.     Analysis

In this case, Ejem's proposed amendments withdraw his § 1983 and "state-

3

Case 4:10-cv-03740 Document 15 Filed in TXSD on 05/09/12 Page 4 of 17

created danger" claims against the Center and instead assert them against "John Doe," the unknown supervisor to whom Justin reported the first assault.

Although the Federal Rules do not contemplate "John Doe" defendants, courts allow plaintiffs to join unknown and unnamed defendants and to identify them through discovery. *See Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 243 n.20 (5th Cir. 1993) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)). *But see* Fed. R. Civ. P. 10(a) (stating that "the complaint must name all parties"). Indeed, some notable cases have involved parties using "John Doe," "Jane Doe," or other similar pseudonyms. *See, e.g., Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 389 (1971). Courts do not favor the use of "John Doe" defendants, but the courts typically will not deny joinder unless discovery would clearly not uncover the defendants' identity or the claims against them would be dismissed on other grounds. *See Gillespie*, 629 F.2d at 642.

Here, the Center raises two objections to joining "John Doe." First, it argues that the amendment is futile because Ejem can neither serve nor obtain a judgment against a "John Doe" defendant. It also contends that joining "John Doe" is improper since Justin should already know his identity. Neither argument, however, is persuasive.

The requirements of due process do not make joinder of a "John Doe" defendant futile. At a minimum, due process demands that defendants be provided with notice of the suit and a meaningful opportunity to be heard. *See LaChance v.*

*Erickson*, 522 U.S. 262, 266 (1998). Joining an unnamed defendant does not violate this precept, because the plaintiff must identify and serve "John Doe" before obtaining a judgment against him. *See Scheetze v. Morning Call, Inc.*, 130 F.R.D. 34, 37 (E.D. Pa. 1990). If the plaintiff is unable to identify "John Doe" after an adequate time for discovery, the court must dismiss the claims against him. *See Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 243 & n.20 (5th Cir. 1993); *Cowart v. Dallas Cnty. Jail*, No. 3-10-CV-1800-G, 2010 WL 4704480, at *2 (N.D. Tex. Oct. 18, 2010) (dismissing "John Doe" defendants *after* the plaintiff had the opportunity to conduct discovery). And, if "John Doe" defendants are prejudiced by the litigation proceeding in their absence, they may raise the issue in an appropriate motion. *See Scheetz*, 130 F.R.D. at 37. Therefore, the Center's claim that joining "John Doe" would be futile lacks merit.

Moreover, the Center's argument that adding "John Doe" is improper does not fare any better. The Center claims that Justin should already know the identify of the supervisor to whom he reported the assault. However, the fact that the plaintiff is in the best position to identify the defendant does not mean that he can do so with the specificity needed to direct service of process. For example, most cases with "John Doe" defendants involve excessive-force claims against police officers or prison guards. *See, e.g., Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 389 (1971); *Hittle v. City of Garland*, No. 92-1492, 1993 WL 309911, at *1 (5th Cir. May 6, 1993). Like Justin, the plaintiffs in these cases are in the best position to identify

5

the defendants. Nevertheless, the courts still allow joinder and targeted discovery. *See Hittle*, 1993 WL 309911, at *2 (holding that the district court abused its discretion by dismissing "John Doe" defendants before the plaintiff had a reasonable time to conduct discovery). Therefore, the Center's objections are not valid, and the Court will give leave to file the amended complaint.

### III. Subject Matter Jurisdiction

The next issue is whether the amended complaint should be dismissed either for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6).

The Court must resolve the jurisdictional dispute first. A motion to dismiss for lack of subject matter jurisdiction generally takes precedence over other defenses, because courts cannot decide contested questions of law when their jurisdiction is in doubt. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (stating that there is no mandatory "sequencing of jurisdictional issues"). Whether a complaint states a proper cause of action is a determination on the merits. *See Bell v. Hood*, 327 U.S. 678, 682 (1946). Consequently, the court may only answer that question after, and not before, it has assumed jurisdiction over the case. *See id.*

#### A. Rule 12(b)(1) Standard

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction challenges the court's competence or authority to hear and decide the case before

it. "Federal courts are courts of limited jurisdiction and, absent jurisdiction conferred by statute, lack the power to adjudicate claims." *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). The burden of establishing federal jurisdiction ultimately rests on the party seeking to invoke it (typically, the plaintiff). *See id.*; *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The court's review depends on the type of Rule 12(b)(1) motion filed. Rule 12(b)(1) motions come in two forms—"facial attacks" and "factual attacks." *See Peterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). A defendant who merely files a Rule 12(b)(1) motion makes a facial attack. *See id.* In those cases, the court examines the complaint and assumes its jurisdictional allegations are true. *See id.* The court will only grant the motion if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction. *See Ramming*, 281 F.3d at 161. On the other hand, a factual attack requires the court to determine the truth of the jurisdictional allegations. A defendant launches a factual attack by filing affidavits, testimony, or other evidence challenging the plaintiff's allegations. *See Peterson*, 644 F.2d at 523. The plaintiff must respond by producing enough evidence to convince the court, by a preponderance of the evidence, that jurisdiction exists. *See id.*

 B. Analysis

The Center has filed a facial attack, claiming that Ejem does not have standing to litigate as next friend for his son and that he failed to exhaust his administrative

7

remedies. The Court, however, concludes that Ejem's amended complaint is sufficient to invoke federal jurisdiction.

   1.   Next-Friend Standing

In this case, Ejem is pursuing the claims against the Center as next friend for his son, Justin. A next friend is a person who appears in a lawsuit to act for the benefit of an incompetent, inaccessible, or minor plaintiff. *See Whitmore v. Arkansas*, 495 U.S. 149, 162 (1990). A next friend is "neither technically nor substantially the party but resembles an attorney or a guardian ad litem …." *Morgan v. Potter*, 157 U.S. 195, 198 (1895). The courts have long accepted next friends representing minors or incompetent persons, *Whitmore*, 495 U.S. at 161, and the Federal Rules of Civil Procedure codify this practice. *See* Fed. R. Civ. P. 17(c)(2).

The courts, however, do not grant next friends standing to sue automatically. *See Whitmore*, 495 U.S. at 163. To overcome the general prohibition on a litigant raising another person's legal rights, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004), the next friend must satisfy two prerequisites.[1] *See Whitmore*, 495 U.S. at 163. First, the next friend must adequately explain why the real party in

---

[1] Although the Court in *Whitmore* discussed next friend standing in the federal habeas context, *Whitmore* itself was not a habeas case. *See Whitmore*, 495 U.S. at 164. Nor was *Whitmore*'s holding confined to habeas cases. *See id.* at 164–65 ("[W]e think that scope of *any* federal doctrine of 'next friend' standing is no broader than what is permitted by the habeas corpus statute, which codified the historical practice." (emphasis added)). Consequently, courts have extended *Whitmore*'s holding to general civil litigation. *See, e.g., Gudavedze v. Kay*, 556 F. Supp. 2d 299, 301 n.2 (S.D.N.Y. 2008); *Ross ex rel. Ross v. Rell*, 392 F. Supp. 2d 224, 226–27 (D. Conn. 2005); *Gonzalez ex rel. Gonzalez v. Reno*, 86 F. Supp. 2d 1167, 1184 (S.D. Fla. 2000).

8

interest cannot act for himself. *See id.* The real party, for example, may be inaccessible, incompetent, or suffer from a debilitating disability. *See id.* Second, the next friend "must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a next friend must have some significant relationship with the real party in interest." *Id.* (internal citations omitted). The next friend bears the burden of establishing the propriety of his status and thereby justify the jurisdiction of the court. *See id.*

In this case, Ejem's amended complaint satisfies the two prerequisites of next-friend standing. First, Ejem alleges that Justin, the real party in interest, is incompetent. According to the complaint, Justin has attention deficit hyperactivity disorder, bipolar disorder, and emotional disturbance. Although he has received medication and therapy, Justin still suffers from hallucinations, improper outbursts, and impulsive behaviors, as well as enuresis and encopresis. Second, Ejem is Justin's father. The parental relationship indicates that Ejem will truly act in Justin's best interests. Therefore, because Ejem's complaint reveals that he may be able to prove facts establishing next-friend standing, Center's facial attack is unsuccessful. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

The Court, however, may revisit Ejem's standing to sue. If the Center can obtain evidence showing that Justin's disability does not prevent him from caring for his own interests in the litigation, it may challenge this Court's jurisdiction again. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject

matter jurisdiction, the court must dismiss the action."); Fed. R. Civ. P. 17(b)(1) (stating that the law of the individual's domicile determines capacity to sue); *Magallon v. Livingston*, 453 F.3d 268, 271 (5th Cir. 2006) (explaining the Texas standard). For instance, in *Jacob v. Herff-Jones, Inc.*, No. Civ. 1:CV-04-1654, 2005 WL 2030449 (M.D. Pa. Aug. 18, 2005), the court dismissed a case brought by a next friend after the deposition of the real party in interest revealed that he was not incompetent. *See id.* at *2. Additionally, if the Court becomes aware of facts suggesting that Justin can manage the litigation himself, it may raise the issue *sua sponte*. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). But, until the Court receives some evidence that Justin is competent, Ejem may continue to pursue the claims as his next friend.

2. Exhaustion of Administrative Remedies

In addition, the Center moves to dismiss Ejem's claims because he failed to exhaust his administrative remedies as required by the Individuals with Disabilities Education Act (IDEA). Under the IDEA, plaintiffs must exhaust all administrative remedies before filing suit, even if they allege violations of the Rehabilitation Act exclusively. *See* 20 U.S.C. § 1415(*l*) (2006); *Gardner v. Sch. Bd. of Caddo Parrish*, 958 F.2d 108, 111 (5th Cir. 1992). The failure to exhaust administrative remedies precludes the court from exercising subject matter jurisdiction over the claims. *See Babicz v. Sch. Bd. of Broward Cnty.*, 135 F.3d 1420, 1422 (11th Cir. 1998); *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995).

Exhaustion, however, is not an absolute requirement. The IDEA only requires exhaustion when the plaintiffs seek relief under the Rehabilitation Act that is also available under the IDEA. *See* 20 U.S.C. § 1415(*l*); *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004). The IDEA does not provide for the recovery of damages. *See Witte v. Clark Cnty. Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999). Consequently, courts have held that plaintiffs need not exhaust administrative remedies when they only seek compensatory damages and do not complain about the student's current educational plan. *See id.*; *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000).

Here, Ejem only seeks to recover damages to redress Justin's physical and psychological injuries. He does not does not challenge Justin's current educational plan. In fact, Justin is no longer a minor, and neither the complaint nor any other pleading indicates that he is currently attending any school. Accordingly, exhaustion of administrative remedies was not necessary. *Accord Witte*, 197 F.3d at 1275 (noting that requested relief was "retroactive only" and the IDEA was ill-suited to remedy past instances of physical injury). The Court, therefore, will deny the motion to dismiss for lack of subject matter jurisdiction.

## IV. Sufficiency of the Amended Complaint

Having determined that Ejem has properly invoked federal jurisdiction, the Court must now decide whether his complaint states "a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6); *Bell v. Hood*, 327 U.S. 678, 682 (1946).

In the complaint, Ejem claims that the Center's failure to respond to the alleged sexual assault violated Title IX and the Rehabilitation Act. These claims are plausible on their face, and, consequently, the motion to dismiss will be denied.

A. *Rule 12(b)(6) Standard*

A motion to dismiss for failure to state a claim tests the sufficiency of the complaint under Federal Rule 8. Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). To satisfy this Rule, the complaint must contain sufficient facts, which, if true, would "state a claim for relief that is plausible on face." *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although heightened fact pleading of specifics is not required, the pleader must allege enough facts in support of his claim to give fair notice to the defendant. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007). Unsubstantiated accusations, conclusory assertions, or a "formulaic recitation of the elements of a cause of action will not do." *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

When examining the complaint, the court engages in a two-part inquiry. First, it distinguishes between factual allegations and legal conclusions, because, unlike the former, the latter are not entitled to a presumption of truth. *See id.* at 1950. Second, the court determines whether those allegations "plausibly give rise to an entitlement to relief." *See id.* It will assume that the facts are true, construe them in the light most favorable to the plaintiff, and draw all justifiable inferences in his

12

favor. *See id.*; *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011). Those facts must allow the court, using its own experience and common sense, to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 129 S. Ct. at 1949–50.

B. *Analysis*

Ejem's amended complaint asserts that the Center violated Title IX and the Rehabilitation Act.[2] The Court begins its analysis by taking note of the elements Ejem must plead and prove to recover under those statutes. *See id.* at 1947.

Title IX and the Rehabilitation Act prohibit recipients of federal funding from discriminating based on sex or disability. Title IX provides, with exceptions not relevant here, that "[n]o person … shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance …." *See* 20 U.S.C. § 1681(a) (2006). Title IX proscribes sexual harassment, *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998), regardless of the harasser's gender. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Furthermore, the Rehabilitation Act states that "[n]o qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from

---

[2] In his amended complaint, Ejem withdrew his § 1983 and "state-created danger" claims against the Center, making the Center's motion to dismiss those claims moot.

participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."  See 29 U.S.C. § 794(a).

Courts interpreting Title IX and the Rehabilitation Act have held that schools can be liable for student-on-student harassment based on sex or disability. In *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court recognized an implied cause of action under Title IX for students harassed by their peers. *See id.* at 633.  To recover against the school, the student must establish: (1) he was harassed on the basis of sex; (2) the alleged harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] … access to an educational opportunity or benefit;" and (3) the school had actual knowledge of the harassment but acted with deliberate indifference.  *See id.* Moreover, other courts have extended *Davis* to claims under the Rehabilitation Act.[3] *See, e.g., Werth v. Bd. of Dirs. of the Pub. Schs. of Milwaukee*, 472 F. Supp. 2d 1113, 1128 (E.D. Wis. 2007); *K.M. ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 360 (S.D.N.Y. 2005); *Biggs. v. Bd. of Educ. of Cecil Cnty., Md.*, 229 F. Supp. 2d 437, 445 (D. Md. 2002).  Similar to Title IX plaintiffs, Rehabilitation Act plaintiffs must plead and prove: (1) harassment on the basis of disability; (2) that was

---

[3] Additionally, the Sixth and the Eighth Circuits have stated that schools may be liable for student-on-student harassment based on disability, but they have not expressly adopted *Davis*'s test.  *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453–54 (6th Cir. 2008) (assuming, without deciding, that the *Davis* standard applied); *M.P. ex rel. K.P. v. Indep. Sch. Dist. No. 721*, 326 F.3d 975, 982 (8th Cir. 2003) (applying a "bad faith or gross misjudgment" standard).

14

"severe, pervasive, and objectively offensive;" (3) to which the school remained deliberately indifferent. *See K.M.*, 381 F. Supp. at 360.

In this case, Ejem has pled enough facts to plausibly support recovery under Title IX and the Rehabilitation Act for student-on-student harassment. First, Ejem alleges that Justin was disabled and that his roommate forced him to have oral and anal sex twice. The allegations show sexual harassment prohibited by Title IX. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998). And, given Justin's mental condition, the complaint raises a reasonable inference that the assault was directed at Justin's disability. In addition, Ejem claims that, even though Justin informed a supervisor of the first assault, the Center failed to investigate or take any steps to ensure Justin's safety. Assessing the reasonableness of a response is difficult without knowledge of the surrounding circumstances, but inaction after such a serious allegation may show deliberate indifference. Finally, after learning of both assaults, Justin's parents removed him from the Center. Rape is severe and objectively offensive harassment, and, when it results in withdrawal from school or hospitalization, it denies equal access to educational resources and opportunities. *See Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1298 (11th Cir. 2007). Thus, Ejem has pled sufficient facts to state claims for relief that are plausible on their face.

Moreover, *Davis* rebuts all of the Center's arguments to the contrary. First, the Center argues that Ejem failed to state discrimination claims because he did not

include any facts alleging that the Center itself treated Justin differently than other students. It states that, assuming its policies failed to protect Justin, those policies applied equally to all non-handicapped students. The Supreme Court, however, stated that deliberate indifference to known acts of harassment by other students is tantamount to an intentional and clear statutory violation *by the school*. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642–43 (1999) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). A school cannot remain willfully blind to severe harassment that robs its students of educational opportunities and then use its uniform failure to protect as a shield from liability. *See id.*

Additionally, the Center contends that accepting Ejem's claims would transform schoolyard fights involving disabled children into potential discrimination lawsuits. On the contrary, *Davis* emphasized that harassment must be "so severe, pervasive, and objectively offensive that it effectively bars access to an educational benefit or opportunity." *See id.* at 633. Allegations of *de minimis* harm, such as name-calling or teasing, will not do, and an isolated incident will rarely suffice. *See id.* at 651–52. And, of course, the victim must be harassed because of sex or disability. *See Werth v. Bd. of Dirs. of the Pub. Schs. of Milwaukee*, 472 F. Supp. 2d 1113, 1128–29 (E.D. Wis. 2007) (granting summary judgment when the plaintiff could not present any evidence that harassment was related to his disability). Thus, the Center's arguments are unfounded, and its motion to dismiss will be denied.

## V. Conclusion

Mindful of the mandate to "freely give leave to amend when justice so requires," the Court will allow Ejem to file his amended complaint. *See* Fed. R. Civ. P. 15(a)(2). That complaint invokes the jurisdiction of the Court and properly states a claim for relief. Accordingly, it is

**ORDERED** that the "Plaintiffs' Opposed Motion for Leave of Court to File Plaintiffs' First Amended Complaint" is **GRANTED**. It is further

**ORDERED** that Ejem file the amended complaint within ten (10) days of the date of this Order. Finally, it is

**ORDERED** that the "Defendant's Motion to Dismiss" is **DENIED**.

**SIGNED** on this 9th day of May, 2011.

_____
WALTER S. SMITH, JR.
UNITED STATES DISTRICT JUDGE