IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARRY PAUL TAYLOR, et al._<br>     *Plaintiffs,*_ | § § § | |
| v. | § § | CIVIL ACTION NO. 4:11-CV-03740 |
| RICHMOND STATE SUPPORTED<br>LIVING CENTER,<br>     *Defendant.* | § § § § | |

**DEFENDANT'S RULE 12(B)(1) AND (6) MOTION TO
DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE NANCY F. ATLAS, UNITED STATES DISTRICT JUDGE:

Defendant RICHMOND STATE SUPPORTED LIVING CENTER ("RICHMOND" OR "THE SSLC"), hereby files its *Rule 12(b)(1) and (6) Motion to Dismiss Plaintiff's First Amended Complaint*, and in support thereof, would show this Court the following:

**I.
INTRODUCTION**

Plaintiffs Larry Paul Taylor and Pamela Lavelle Varnell (collectively the "Plaintiffs"), sued Richmond alleging that their son, David Taylor ("David"), a disabled individual, was discriminated against because of his disability when he was allegedly beaten to death by some person or persons while in the care of the SSLC. *See* Pl's Original Complaint, ¶¶ 2, 20. The Plaintiffs brought this lawsuit pursuant to the discrimination provisions found in Title II of the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act. *See* Pl's Original Complaint, ¶¶ 27-36. The SSLC filed a Rule 12(b)(6) Motion to Dismiss the claims, which the Court orally denied without prejudice at the initial status conference to allow

Plaintiffs to obtain certain discovery and an opportunity to amend their complaint to assert a proper cause of action. However, the Court expressed serious reservations about Plaintiffs' discrimination claims at that hearing. *See* Docket No. 13, Hearing Minutes and Order dated January 30, 2012, p. 1. The Plaintiffs subsequently filed their Amended Complaint on May 21, 2012. *See* Docket No. 22, Pl's First Amended Complaint.

As with its first Motion to Dismiss, Richmond again denies that it discriminated against David in any form. Furthermore, although the Plaintiffs' First Amended Complaint contains exponentially more volume than their Original Complaint, it nevertheless fails to set forth any facts which, if believed, plausibly lead to the conclusion that Richmond illegally discriminated against David in any manner. Accordingly, the Plaintiffs have failed to state any valid claim under the ADA and/or the Rehabilitation Act, and therefore, their lawsuit should be dismissed.

## II.
## FACTS PLEADED

Plaintiff's First Amended Complaint contains a myriad of alleged facts, only some of which relate to David's alleged treatment at the SSLC.[1] The salient elements of Plaintiffs' factual allegations appear to be that (1) David was born with a complex collection of developmental disabilities, which required professional care during his childhood and, eventually, the need for full time, twenty-four hour per day care that only an ICF/MR facility such as Richmond could provide; (2) David was more severely disabled than his peers at the SSLC, and even more severely disabled than his peers in the specific unit in which he lived; (3) David's caregivers were not appropriately trained; (4) David suffered an extensive history of

---

[1] Plaintiffs' First Amended Complaint contains extensive historical discussion of the ADA and the Rehabilitation Act, along with discussion of old litigation related to State Supported Living Centers (formerly State Schools), the DOJ litigation, and the 2009 settlement between the state of Texas and the DOJ. Other than to point out that the DOJ settlement is still in process as it contemplates a five year period of process improvements by the SSLCs, Defendant's response to these discussions is that precisely none of the paragraphs dedicated to these subjects articulates a cause of action against the Richmond SSLC.

treatment for injuries dating back to 2009; (5) David should have been the subject of more thorough planning by his caregivers at the SSLC to address and potentially avoid these numerous injuries, including full time video surveillance; (6) two caregivers employed by the SSLC in particular, Rivers Glover and Amara Oparanozie, directly contributed to his death by their conduct;[2] (7) after Glover injured David, an unnamed "nurse supervisor" was notified of his deteriorating condition but failed to intercede; and (8) David died from the injuries sustained at the hands of Glover and Oparanozie.

### III.
### SUMMARY OF ARGUMENT

Against these facts, Plaintiffs have articulated two causes of action against Richmond, both rooted in a discrimination cause of action: one under the ADA and the other under the Rehabilitation Act.  But while Plaintiffs have sufficiently alleged facts that David was both disabled and injured while living at the Richmond SSLC, Plaintiffs have failed to plead facts connecting these two facts – that is, Plaintiffs have not pleaded any facts which, if believed, would lead to the conclusion that David's injuries were caused by discrimination on the part of the SSLC itself.  Instead, Plaintiffs' claims against the SSLC would only be sufficient if the ADA and Rehabilitation Act imposed strict liability, which they do not.  Accordingly, the criminal conduct of Glover and Oparanozie is not imputed to the SSLC.

The claims against the SSLC itself – *e.g.*, that it failed to monitor David via video surveillance, that it failed to properly train Glover and Oparanozie, that the "nurse supervisor" failed to properly intercede – even if believed, have absolutely nothing to do with *discrimination*

---

[2]Plaintiffs allege that Glover, a direct care staff member, pushed David down hard after a trip to the restroom, and that David hit a part of the bed frame, rupturing his stomach.  Plaintiffs allege that, afterwards, Oparanozie failed to check David's vital signs as required by his treatment plan, and that by failing to do so, she contributed to David's death.  Plaintiffs correctly note that both Glover and Oparanozie have been indicted on criminal charges.

against David because of his disabilities. Because Plaintiffs have failed to specify any facts which support the notion that the SSLC itself was motivated by discrimination, their claims should be dismissed.

## III.
## STANDARD OF REVIEW

The standard of review on a motion made pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure is well established: a plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). Although specific facts are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement." *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." *Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Woodard v. Andrus,* 419 F.3d 348, 351 (5th Cir.2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal.* 556 U.S. 662, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 1950.

In determining a motion to dismiss, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint relies heavily and which are, thus, rendered "integral" to the complaint. *Scanlan v. Texas A & M Univ.,* 343 F.3d 533, 536 (5th Cir.2003); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000).

## IV.
## ARGUMENT & AUTHORITIES

**A.    The Plaintiffs' "Discrimination" Claims under the ADA Fail to State a Claim because the Plaintiffs Plead No Facts Establishing that Any Acts or Omissions Taken with Respect to David were Taken Because of His Disability.**

To establish a prima facie case of discrimination under Title II of the ADA, a plaintiff must prove: (1) that he is a qualified individual with a disability; (2) that he has been excluded from participation in, or denied the benefits of the services, programs, or activities of a public entity, or otherwise discriminated against by such entity; and (3) that such exclusion or discrimination was by reason of his disability. 42 U.S.C. § 12132; *Lightbourne v. County of El Paso, Tex.,* 118 F.3d 421, 428 (5th Cir.1997).

Here, the Plaintiffs have alleged facts supporting the conclusion that David was a qualified individual with a disability (Pl's Amd. Complaint ¶ 24), and that he sought services/treatment from Richmond, which is a public entity and a recipient of federal funds (Pl's Amd. Complaint, ¶ 26).  They have also alleged facts supporting the conclusion that David was injured and died while living at Richmond.  However, they have pleaded no facts to support the conclusion that any policies, procedures, or customs at Richmond were applied to David in any manner differently than any other person, much less that any such supposedly different

application was made *solely because of David's disability*. In fact, the Plaintiffs have not identified any policies, procedures, or customs at all.

Moreover, the Plaintiffs have not pleaded the existence of any non-disabled or even "less" disabled comparators to whom the unidentified policies, practices, and/or customs were applied more favorably. At best, the Plaintiffs have pleaded facts showing that David was the subject of a criminal act by Glover and/or Oparanozie, and did not receive needed medical treatment for a period of time.[3] They have not alleged that the denial of medical treatment or physical assault of residents is a regular policy, custom, or practice at Richmond, nor have they identified any other persons who were either not disabled or less severely disabled, but received more favorable treatment by virtue of some policy, procedure, or custom at Richmond. There are simply no facts (other than the conclusory assertions of discrimination) that demonstrate the necessary causation linking the alleged bad acts to a discriminatory animus.

What the Plaintiffs have alleged with respect to the purported conduct of Richmond employees other than Glover and Oparanozie lacks discriminatory intent. Indeed, paragraphs 81-90 of Plaintiff's Amended Complaint focus squarely on David's treatment plan, and allege that "[t]he failure to correctly train David and staff ultimately led to his injury and death." But absent from the entire Amended Complaint is any fact which would suggest that this alleged lack of training was motivated by discrimination – the very essence of the ADA claim. Instead, the Amended Complaint notes that David's treatment plan, including his doctor's orders, were aligned with David's needs – *e.g.,* issues relating to his eating disorders, falling risk and his self-injurious behaviors, all of which predated

---

[3] Importantly, the Plaintiffs do not allege that Richmond is vicariously liable for the alleged criminal acts of Glover or Oparanozie.

David's admission to the SSLC.

The Plaintiffs also allege that, after David was injured by Glover, he was referred to "sick call," and that the "Campus Nurse Supervisor" was informed that David was allegedly having trouble moving his extremities. Pls' Amd. Compl. at ¶ 103. But again, there are no facts alleging that any of the supposed failure by the SSLC to properly care for David was motivated by discrimination because of David's disabilities.[4] Instead, the Plaintiffs simply describe the alleged events leading to David's death, leaving out any facts on the issue of discriminatory animus. For example, Plaintiffs allege that "[i]n the [hours] before David's death, [SSLC] Nurse Supervisor was advised of his deteriorating medical condition, but failed to do anything in response." *Id*., at ¶ 132. Similar allegations are levied at Oporanozie, who allegedly failed to "follow up" on a report that David was having difficulties moving his extremities and failed to check his vital signs. *Id.*, at ¶¶ 133, 135.

On these facts, Plaintiffs allege that the "acts and omissions by staff at the Richmond SSLC…including and especially the neglect of David Taylor, all on the basis of his severe disabilities [sic], thereby violated Title II of the ADA." *Id*., at ¶ 154. Under Rule 12 jurisprudence, however, it is not sufficient merely to plead legally conclusory assertions in an attempt to set forth the elements of the cause of action; rather, a plaintiff must plead sufficient factual detail to give the defendant fair notice of the claim. *Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949. Because Plaintiffs have alleged no facts to establish this critical element of his disparate treatment claim, the Court should grant Richmond's motion to dismiss those claims.

---

[4] It is difficult to imagine what facts the Plaintiffs might plead that would lead to a conclusion under these circumstances that anyone at the SSLC was motivated by a desire to discriminate against David because of his disabilities as compared to the other residents of the SSLC facility, literally all of whom are and were disabled.

**B.   The Plaintiffs' "Discrimination" Claims under Section 504 Fail to State a Claim because the Plaintiffs Pleads No Facts Establishing that Any Acts or Omissions Taken with Respect to Him were Taken "Solely by Reason of" His Disability.**

To the extent the Plaintiffs have failed to articulate a claim under the ADA, their claims under the Rehabilitation Act are even more tenuous, as the standard for liability under the Rehabilitation Act is even more stringent. To establish a prima facie case of disability discrimination under Section 504, a plaintiff must allege: (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified disabled person, who *solely by the reason of his disability* has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity. *Melton v. Dallas Area Rapid Transit,* 391 F.3d 669, 676 n.8 (5th Cir.2004) (citing *Brown v. Sibley,* 650 F.2d 760, 769 (5th Cir.1981)).

To this end, Section 504 "cannot be read to impose strict liability on public entities that neither caused plaintiffs to be excluded nor discriminated against them." *Bacon v. City of Richmond,* 475 F.3d 633, 639–40 (4th Cir.2007) (granting summary judgment in favor of city, where school board, and not the city, was responsible for any ADA violation). *S.S. v. Eastern Kentucky University*, 532 F.3d 445 (6th Cir. 2008), concluded that the appropriate analytical framework for liability requires deliberate indifference on the part of the agency itself. This is consistent with the underpinnings of Section 504's waiver of immunity – a knowing waiver of sovereign immunity in exchange for the acceptance of federal funds.

As with their ADA claim, Plaintiffs have failed to articulate any facts which, if believed, lead to the conclusion that David was denied the benefits of the SSLC's program or otherwise discriminated against because of his disabilities, much less *solely* because of his disabilities, as

required under the Rehab Act. *See* pp. 5-7, above. Accordingly, Plaintiffs have failed to articulate a Rehabilitation Act claim and it should be dismissed.

C. **The Plaintiffs' Disparate Impact Claims should be Dismissed under Rule 12(b)(6) because They have Pleaded No Facts Supporting their Conclusory Assertion that Some Policies at Richmond, Even Where Applied Consistently, Resulted in a Discriminatory Impact on Any Class of Persons to which David Taylor Belonged.[5]**

Disparate impact claims concern facially neutral policies and practices that "create such statistical disparities disadvantaging members of a protected group that they are 'functionally equivalent to intentional discrimination.'" *Munoz v. Orr,* 200 F.3d 291, 299 (5th Cir.2000) (quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 987, 108 S.Ct. 2777 (1988)). In order to properly set forth a claim for disparate impact that can survive a Rule 12(b)(6) dismissal motion, a plaintiff must plead the following elements: (1) an identifiable, facially neutral policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two. *McClain v. Lufkin Industries, Inc.,* 519 F.3d 264, 275–76 (5th Cir.2008).[6] Here, the Plaintiffs claims are fundamentally deficient because they have pleaded no facts to support the ultimate conclusion that Richmond SSLC discriminated against David.

The Plaintiffs' disparate impact claim is set forth in one paragraph:

149. Further, and also in addition and in the alternative, a violation of Section 504 also exists because Richmond SSLC had policies, practices and customs which were facially neutral but had a disparate impact on David Taylor due to his disability.

---

[5] That Plaintiffs have continued to advance this theory after expressly withdrawing any such claim in open court is curious and hopefully an oversight by Plaintiffs' counsel. In any event, it is addressed here and should clearly be dismissed.

[6] The Second Circuit has articulated the elements of the claim similarly: To establish a prima facie case of discrimination based upon disparate impact, a plaintiff must allege (1) the occurrence of certain outwardly neutral practices, (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practice, and (3) a causal connection between the policy at issue and the discriminatory effect. *Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565, 575 (2d Cir.2003); *Quad Enterprises Co., LLC v. Town of Southold,* ___ F.3d ___, No. 09–2963–cv, 2010 WL 807946, at *2 (2d Cir. Mar.10, 2010) (unpublished).

*See* Pl's Amd. Complaint, ¶149. Nowhere in the Complaint, however, do the Plaintiffs identify any of these allegedly facially-neutral policies or plead any facts demonstrating how the application of these policies resulted in a discriminatory impact on David and other disabled individuals. This omission is fatal to the claim because in a disparate impact case, the challenged policy or practice must be specifically identified. *See Steele v. GE Money Bank,* 2009 WL 393 860, at *3 (N.D.Ill. Feb. 19, 2009) ("To allege a disparate impact claim ... a plaintiff must identify a specific practice or policy adopted by the defendant" that disparately effects a protected group) (citing *Smith v. City of Jackson,* 544 U.S. 228, 241, 125 S.Ct. 1536 (2005)).

Of equal importance is that the Plaintiffs plead no facts that could establish the causation element – i.e., that any disparate impact (if one exists) was caused *solely* by the fact that David Taylor is disabled. There are no facts alleging the existence of a more favorable impact of these alleged policies on non-disabled persons from which any disparities can be established. Rather, the Plaintiffs simply allege that the application of one or more unnamed, unidentified policy or practice at Richmond SSLC somehow results in a less favorable impact (whatever that impact may be) upon disabled individuals. *See* Pl's Amd. Complaint 149.

Because the Plaintiffs have wholly failed to plead even a modicum of facts in support of the elements of a disparate impact claim, they have failed to comport with the requirements of Rule 12, and failed to state a claim upon which this Court may award relief. Accordingly, the Court should grant the Defendant's Rule 12(b)(6) motion as to Plaintiffs' disparate impact claims and dismiss them from the lawsuit.

## V.
## CONCLUSION AND PRAYER

FOR THE FOREGOING REASONS, Defendant Richmond State Supported Living Center respectfully requests that the Court GRANT the instant motion and dismiss Plaintiffs'

lawsuit in its entirety. The Plaintiffs have failed to plead any facts establishing discriminatory conduct in violation of either the ADA or the Rehabilitation Act because he has pleaded no facts by which a comparison can be made to determine whether David was subjected to conduct different than any other non-disabled or lesser disabled person at the SSLC. Moreover, even if the Plaintiffs have pleaded facts showing the requisite differences in David's treatment, they have pleaded no facts to establish that the different treatment was disability-based. Finally, the Plaintiffs' disparate impact and disparate treatment claims fail because they have pleaded no facts identifying the policies, practices, and/or customs which were either applied discriminatorily or had a discriminatory impact on David. All the Plaintiffs have pleaded are the conclusory, formulaic buzzwords inherent in articulating the elements of a proper claim. Because these types of pleadings are not sufficient to set forth a valid claim, the Plaintiffs'claims should be dismissed for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

GREG ABBOTT
Texas Attorney General

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

/s/ Daniel C. Perkins
**DANIEL C. PERKINS**
Texas Bar No. 24010301
**ERIC L. VINSON**
Texas Bar No. 24003115
Assistant Attorneys General
Texas Attorney General's Office
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

*ATTORNEYS FOR DEFENDANT*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the above *Defendant's Rule 12(b)(6) Motion to Dismiss* was served by the following manner, on the **7th day of June 2012,** upon the following individuals as follows:

Martin J. Cirkiel
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664

☒ Via CM/ECF email:
☐ Via Facsimile
☐ Via Regular Mail
☐ Via Certified Mail Return Receipt Requested
☐ Via Overnight Mail or UPS/FedEx

Michael Zimmerman
The Zimmerman Law Firm
3501 W. Waco Drive
Waco, Texas 76710

☒ Via CM/ECF email:
☐ Via Facsimile
☐ Via Regular Mail
☐ Via Certified Mail Return Receipt Requested
☐ Via Overnight Mail or UPS/FedEx

/s/Eric L. Vinson
**ERIC L. VINSON**
Assistant Attorney General
General Litigation Division